# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES DEAN,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>CAROLYN W. COLVIN,  )<br>Acting Commissioner of the Social  )<br>Security Administration,  )<br>)<br>)<br>Defendant.  ) | Case No. CIV-13-350-RAW-SPS |

## REPORT AND RECOMMENDATION

The claimant James Dean requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on August 4, 1960, and was fifty-one years old at the time of the administrative hearing (Tr. 54, 148). He completed high school and has worked as a fabricator assembler, sewing machine operator, injection molding machine operator, and cutting machine operator (Tr. 68, 174). The claimant alleges he has been unable to work since December 24, 2009, due to chest discomfort, shortness of breath, headaches, high blood pressure, atrial fibrillation, and congestive heart failure (Tr. 168).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on January 10, 2010. His application was denied. ALJ Osly F. Deramus conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated February 16, 2012 (Tr. 34-45). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found the claimant retained the residual functional capacity ("RFC") to perform the full range of light work as defined by 20 C.F.R. § 404.1567(b) (Tr. 14). The ALJ concluded that the claimant was not disabled because he could return to his past relevant work as a sewing

machine operator (Tr. 44).

## Review

The claimant contends that the ALJ erred: (i) failing to properly analyze the medical opinion of his treating physician, Dr. Troy Norred, M.D.; (ii) by failing to support the RFC for light work with substantial evidence; (iii) by failing to properly account for his obesity; and (iv) by failing to properly assess his credibility. The undersigned Magistrate Judge finds that the ALJ did fail to properly analyze the treating physician opinion of Dr. Norred, and the Commissioner's decision should therefore be reversed for further proceedings.

The ALJ determined that the claimant's heart disease was a severe impairment, and that his obesity, sleep apnea, shortness of breath, high blood pressure, and headaches were nonsevere (Tr. 36). The medical record contains treatment from Dr. Norred, the claimant's cardiologist, from 2008 through 2011. On May 5, 2008, Dr. Norred noted that the claimant had cardiomyopathy and atrial fibrillation, and was concerned about getting a more aggressive strategy for controlling the claimant's atrial fibrillation (Tr. 288). On May 3, 2009, Dr. Norred diagnosed the claimant with cardiomyopathy, atrial fibrillation, hypertension, and mild coronary artery disease, and referred him for cardiac ablation procedure (Tr. 284). At a six-month checkup Dr. Norred noted that the claimant's blood pressure was under control but he was experiencing shortness of breath and chest discomfort (Tr. 280-282). On January 4, 2010, a nuclear stress revealed a small defect in the inferior segment that was reversible and mildly decreased ejection fraction of 46%.

He noted reports that the claimant had increased shortness of breath, mild chest discomfort, fatigue with exertion, lifting, and anything strenuous, and he felt unable to complete tasks he had been doing (Tr. 277, 299). On January 21, 2010, the claimant underwent cardiac catheterization and an impression of mild coronary artery disease and preserved LV systolic function with elevated end-diastolic pressures (Tr. 289). Dr. Norred wanted to aggressively treat the claimant's hypertension and weight control for atrial fibrillation, as secondary risk factor modifications (Tr. 290).

Following a sleep study, the claimant was put on a CPAP machine at night which revealed obstructive sleep apnea syndrome, snoring, obesity, and successful CPAP titration (Tr. 302-303). On August 2, 2010, the claimant presented to Dr. Norred with complaints of dizziness, lightheadedness, and a frank syncopal episode. His heart rate was elevated, and Dr. Norred added the impression of congestive heart failure, recommending that the claimant continue suppressive medications but might still need a pacemaker (Tr. 320-321).

On October 15, 2010, Dr. Thomas Walsh saw the claimant for attempted cardioversion prior to possible pacemaker placement, and treatment notes reflect that he underwent cardioversion twice and returned to the floor in atrial fibrillation (Tr. 326-328). The Physician's assistant dictated a note stating that the claimant was discharged and able to do activities "as tolerated," and that he had been given a work release to return to work without restrictions (Tr. 328).

On November 8, 2010, Dr. Norred indicated the claimant's symptoms were out of sync with atrial fibrillation, that they needed better control of the claimant's hypertension, and he was going to look for evidence of possible restrictive cardiomyopathy and evidence of pulmonary disorder and pulmonary function tests (Tr. 354). The pulmonary function tests revealed mild to moderate restriction on spirometric values, as well as flow volume curve estimation. He had mild airflow obstruction with a preserved diffusion capacity and no significant bronchodilator response. These findings were noted to be consistent with obesity related dyspnea (Tr. 355). On January 3, 2011 (two days after the claimant's amended disability onset date), Dr. Norred stated that the claimant was not a good candidate for a pacemaker, that they were going to continue with rate control measures, blood pressure control, and working to keep him out of congestive heart failure. He stated, "With his cardiovascular status, it does not look like he is going to be able to maintain the type of activity level he is required to for his work, and I think that is going to be a permanent situation" (Tr. 409-411). On July 11, 2011, Dr. Norred saw the claimant and noted that his chronic stable diagnoses being followed were: atrial fibrillation, diastolic congestive heart failure, cardiomyopathy, hypertension, coronary artery disease, arrhythmia, cardiomegaly, dizziness, and fatigue (Tr. 408). On September 12, 2011, Dr. Norred recommended lap band surgery to perhaps make possible cardioversion for his atrial fibrillation if his weight were reduced (Tr. 405).

State reviewing physician Dr. Donald Baldwin, completed a Physical Residual Functional Capacity Assessment in which he found that the claimant could perform the

full range of light work (Tr. 378). Dr. Baldwin summarized the evidence, but did not indicate he had reviewed Dr. Norred's opinion regarding the claimant's work capabilities (Tr. 384, 411).

Medical opinions from a treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give it by analyzing the factors set forth in 20 C.F.R. § 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Finally, if the ALJ decides to

reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id*. at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id*. at 1300 [quotation omitted].

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by his treating physicians. Although the ALJ noted the proper analysis at the outset of step four, he failed to properly apply it when he ignored the evidence in the record as to the claimant's continued treatment for cardiomyopathy, hypertension, coronary artery disease, arrhythmia, cardiomegaly, dizziness, and fatigue (Tr. 411). The ALJ's conclusion that the opinions expressed by Dr. Norred were inconsistent with other medical evidence in the record would have been a legitimate reason for refusing to give them controlling weight if the ALJ had specified the inconsistencies to which he was referring. *See, e.g., Langley,* 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins,* 350 F.3d at 1300. *See also Wise v. Barnhart,* 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was 'inconsistent with the credible evidence of record,' but he fails to explain what those inconsistencies are.") [citation omitted]. Furthermore, the ALJ was not required to give controlling weight to Dr. Norred's opinion that the claimant could not

return to work, *see, e. g.,* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), but he *was* required to determine the proper weight to give that opinion by applying the factors in 20 C.F.R. § 404.1527. Instead, the ALJ assigned that statement "little weight" because it was not fully consistent with the medical evidence of record. *See Langley,* 373 F.3d at 1119. *See also Miller v. Barnhart*, 43 Fed. Appx. 200, 204 (10th Cir. 2002); Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3 (July 2, 1996) ("If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record."). The ALJ thus improperly evaluated the treating physician's opinion that the claimant was disabled.

Last, the claimant's daughter completed a Third Party Function Report. She stated that he gets tired quickly when doing normal activities, and that he has chest pains and shortness of breath (Tr. 231). She indicated that he does little housework, feeds his dogs, and watches television, and that his sleep is affected by sleep apnea (Tr. 232). She indicated that Dr. Norred recommended he seek disability due to stress and because physical labor at work was too much on his heart (Tr. 238). Social Security Ruling 06-03p (SSR 06-03p) provides the relevant guidelines for the ALJ to follow in evaluating "other source" opinions from non-medical sources who have not seen the claimant in

their professional capacity. *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 (Aug. 9, 2006). SSR 06-03p states, in part, that other source opinion evidence, such as those from spouses, parents, friends, and neighbors, should be evaluated by considering the following factors: (i) nature and extent of the relationship; (ii) whether the evidence is consistent with other evidence; and (iii) any other factors that tend to support or refute the evidence. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *5-6. The ALJ mentioned the Third Party Function Report, but gave it "little weight," rejecting with using boilerplate language: "[A] lay witness cannot determine whether observed behaviors are medically compelled" (Tr. 43). He thus wholly failed to properly evaluate it in accordance with the factors set out in SSR 06-03p. The ALJ's task in evaluating credibility of lay witness testimony is precisely to determine whether the witness's opinion is sincere or insincere, and then determine what weight, if any, to ascribe to the opinion or testimony. *See Spicer v. Astrue*, 2010 WL 4176313, at *2 (M.D. Ala. Oct. 18, 2010) (finding that an ALJ's rejection of a lay witness statement because it was not a substitute for an appropriate medical opinion must *not* be based on a rationale that "applies with equal force to every 'lay statement.'"). Notably, while it may be appropriate for the ALJ to reject lay witness testimony that is based on the subjective complaints of a claimant when the ALJ has already determined that the claimant is not credible, *see, e.g., Valentine v. Commissioner Social Security Administration*, 574 F.3d 685, 694 (9th Cir. 2009) ("Mrs. Valentine's testimony of her husband's fatigue was similar to Valentine's own subjective complaints. Unsurprisingly, the ALJ rejected this evidence based, at least in part, on 'the

same reasons [she] discounted [Valentine's] allegations.' In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such compalints, it follows that the ALJ also gave germane reasons for rejecting her testimony."), he is not entitled to reject *all* lay witness testimony with a blanket statement. The ALJ is perfectly capable of separating the evidence that is based on the personal observations of the lay witness and, on the other hand, the evidence presented by the lay witness that is based on claimant's subjective complaints. *See also Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989) ("[W]here the record on appeal is unclear as to whether the ALJ applied the appropriate standard by considering all the evidence before him, the proper remedy is reversal and remand.") [citation omitted].

Because the ALJ refused to discuss probative evidence inconsistent with his RFC determination, the undersigned Magistrate Judge finds he did not properly consider it. Consequently, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis of the claimant's RFC. If on remand there is any adjustment to the claimant's mental RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the

ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

    **DATED** this 10th day of September, 2014.

_____
    **STEVEN P. SHREDER**
    **UNITED STATES MAGISTRATE JUDGE**